Filed 11/27/23  Conrado v. CLS Landscaping Management CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DIEGO CONRADO, | D081551 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVDS1723453) |
| CLS LANDSCAPING MANAGEMENT, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order and judgment of the Superior Court of San Bernardino County, Brian McCarville, Judge.  Reversed and remanded with instructions.

Law Offices of Ostin & Kothary, Sandra K. Brislin; Greines, Martin, Stein & Richland, Robert Olson, Cynthia E. Tobisman and Laura G. Lim for Defendants and Appellants.

The Dolan Law Firm, Christopher B. Dolan, Aimee E. Kirby and Cristina Garcia for Plaintiff and Respondent.

INTRODUCTION

The present appeal concerns two posttrial actions taken by the trial court after a jury awarded Diego Conrado damages of $181,605.61 in a motor vehicle negligence lawsuit against Jose Juan Espinoza Gonzalez and his employer, CLS Landscaping Management, Inc. (CLS) (collectively, defendants).  First, in response to a motion filed by Conrado under Code of Civil Procedure[1] section 2033.420, which authorizes an award of reasonable attorney fees incurred by a party to prove the truth of matters the other party unreasonably fails to admit in response to requests for admission, the trial court granted the motion and awarded $500,000 in attorney fees.  Defendants contend the evidence submitted by Conrado was insufficient to support the amount awarded.  We agree, reverse the order awarding fees, and remand for a redetermination of fees.

Second, after defendants filed a motion under section 998 seeking recovery of their postoffer costs on the ground their offer to compromise was not accepted and Conrado failed to obtain a more favorable judgment than the offer, the trial court entered a final judgment without ruling on the motion.  We conclude the court erred and entered judgment prematurely, because the provisions of section 998 must be applied before entering judgment.  We thus reverse the judgment for a determination of defendants' section 998 motion.

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *Pre-Trial Proceedings*

A.     *The Collision and the Complaint for Motor Vehicle Negligence*

This case arises from a 2016 vehicle collision.  Espinoza Gonzalez drove his employer's van into an intersection controlled by a four-way traffic signal and struck the passenger side of a car.  Conrado was a passenger in the car.

In November 2017, Conrado sued Espinoza Gonzalez and his employer, CLS, alleging a single cause of action for motor vehicle negligence. Defendants filed answers to the complaint asserting various affirmative defenses.

B.     *Relevant Discovery*

In January 2018, Conrado served a first set of requests for admission on defendants asking them to admit that Espinoza Gonzalez's negligence was the cause of the accident (request no. 4); Espinoza Gonzalez was negligent in the operation of the vehicle he was driving (request no. 9); and Espinoza Gonzalez's negligence caused harm to Conrado (request no. 10).  In February 2018, CLS responded that it had insufficient information to admit or deny the requests.  Espinoza Gonzalez's responses to these requests for admission are not in the appellate record, but it is undisputed he did not admit them, either.

In June 2019, Conrado served a second set of requests for admission on Espinoza Gonzalez asking him to admit he was negligent and that he accepted liability "for some damage" sustained by Conrado in the collision (request no. 20); that his negligence caused the collision (request no. 25); that Conrado was not comparatively at fault for the collision (request no. 27); and

3

that Espinoza Gonzalez was 100 percent at fault for the collision (request no. 29).[2]  In August 2019, Espinoza Gonzalez denied these requests.

Meanwhile, in July 2019, a court reporter entered a certificate of nonappearance after Espinoza Gonzalez failed to appear for a deposition arranged by counsel for Conrado.

C.    *Defendants' Section 998 Offer to Compromise*

In February 2020, defendants served Conrado with an offer to compromise pursuant to section 998.  Defendants offered $250,001, with each party to bear their own costs and attorney fees.  The offer was conditioned on Conrado signing a release of claims, a copy of which was attached to the offer.  Conrado did not accept the offer, and the case went to trial.

## II.

### *Trial*

The trial lasted 20 days.  The first three days were spent on administrative issues (e.g., trial protocol and scheduling), motion in limine arguments, and jury selection.

Both sides brought multiple motions in limine.  Defendants' motions sought exclusion of improper expert testimony, as well as limitations on improper attorney argument and certain damages evidence.

Twenty-seven motions in limine were filed by Conrado, of which 13 addressed issues relating to proof of damages.  Another 13 dealt with jury selection, use of Google Earth images, evidence of Conrado's immigration status and prior felony conviction, and ownership of the car involved in the

---

[2]    Conrado also asked Espinoza Gonzalez to admit that his negligence was the proximate cause "for *all injuries* [*Conrado*] *sustained* as a result of the incident" (request no. 26).  (Italics added, capitalization omitted.)  On appeal, Conrado omits this request from his summary of the relevant procedural background.  We discuss this request further in footnote 11, *post*.

4

collision.  One sought an order striking certain affirmative defenses based on defendants' service of factually devoid form interrogatory responses.

A.    *Evidentiary Phase of Trial*

On the fourth day of trial, the parties gave their opening statements, and Conrado's counsel started presenting evidence.  He called two witnesses: an eyewitness to the accident and the driver of the car in which Conrado was a passenger.  Both witnesses testified the car pulled into the intersection on a green light before it was hit by the other vehicle.  Conrado then took the stand.  He testified that after the collision, he felt pain in his right hand, neck, and back, and he could no longer engage in many of his usual activities.

At the start of trial day five, Conrado's counsel called Espinoza Gonzalez as a witness.  Espinoza Gonzalez admitted seeing the traffic light turn red before he entered the intersection.  Following this testimony, Conrado's counsel told the trial court he would not seek to introduce a police report "given the witness's response and admission that he ran a red light."

Over the rest of the fifth day of trial through the 17th day of trial, all remaining trial witnesses, expert and otherwise, testified about Conrado's injuries and damages.  On the fifth day of trial, after Espinoza Gonzalez testified, Conrado called Jennifer Hertz, M.D., an orthopedic hand surgeon who treated Conrado.  She testified Conrado suffered hand and wrist injuries that in her opinion were related to the collision.

From the sixth through 10th days of trial, Conrado brought another eight medical experts (including two pain management specialists, a chiropractor, a radiologist, and a life care planner) to testify about his injuries and treatment, as well as an economist who testified as to his damages.  Conrado and his romantic partner testified about his physical limitations after the collision.  From the 10th through 14th days of trial, the

defense called three medical experts who testified about Conrado's injuries and treatment, as well as a life care planner who testified about his future damages. The defense recalled Conrado to the stand and questioned him about his injuries and loss of earnings. Conrado's employer testified that Conrado, a tow truck driver, had not worked since the accident due to his injured hand.[3]

Over the 15th through 17th days of trial, the defense called three experts who testified about components of Conrado's claimed damages.

B.      *Conrado's Motions for Directed Verdict*

After the close of evidence, Conrado orally moved for a directed verdict as to certain affirmative defenses alleged in defendants' answers to the complaint. The defense argued the affirmative defenses had not been pursued at trial, and were only pled "years ago . . . just to preserve [them] in case there was evidence developed." The trial court granted Conrado's motion and entered a directed verdict as to 12 affirmative defenses, including comparative fault and lack of proximate causation.

Conrado also moved for a directed verdict on the issue of negligence, based on Espinoza Gonzalez's testimony that he entered the intersection on a red light, which Conrado argued was an admission of negligence per se. In response, the defense stipulated that Espinoza Gonzalez was negligent. The trial court granted the motion.

---

[3]      Certain trial formalities were not closely adhered to in this case. Defense witnesses were called out of order for scheduling reasons. Conrado's case-in-chief appeared to conclude with his last appearance on the witness stand, but he did not formally rest his case until after his employer testified. The defense rested after completing its evidentiary presentation, and Conrado did not offer rebuttal testimony.

Lastly, Conrado moved for a directed verdict on the issue of causation, arguing it was uncontroverted he was injured in the collision and was therefore caused "some harm." The trial court granted the motion. It reasoned that causation as defined in CACI[4] No. 430 requires only a substantial factor that contributed to the plaintiff's harm, and the trial evidence established "this [wa]s not an issue of contested causation."

The trial court instructed the jury that duty, breach, and causation were no longer at issue, leaving damages as the only matter for the jury to decide.

C.    *The Jury's Special Verdict*

In closing, Conrado's counsel asked the jury to award Conrado $10 million in damages for his physical injuries, including to his hand, reduced ability to engage in his usual activities, and pain and mental suffering. Counsel told the jury it was a "big dollar case" and "[s]erious injuries are why there are big jury awards."

The jury returned a special verdict awarding Conrado $151,105.61 in past economic damages, $30,500 in past noneconomic damages, and zero future economic and noneconomic damages.

### III.

*Posttrial Motions*

A.    *Conrado's Posttrial Motions*

On December 22, 2021, Conrado filed a memorandum of costs requesting total costs of $255,642.38. He also filed the following motions: (1) a motion seeking the same $255,642.38 in prevailing-party costs under sections 630 and 1032; (2) a motion for additur or for new trial seeking an

---

4      Judicial Council of California Civil Jury Instructions.

7

additional $4 million in future damages; and (3) a motion for cost-of-proof sanctions under section 2033.420.[5] The motions were scheduled to be heard on January 27, 2022.

Defendants did not file a motion to tax the $255,642.38 in costs claimed by Conrado, nor did they oppose his motion under sections 630 and 1032 for an order awarding those same costs. However, they did oppose Conrado's motion for additur or new trial and for cost-of-proof sanctions under section 2033.420.

In his section 2033.420 motion, Conrado argued defendants unreasonably refused to admit in response to his requests for admission that (1) Espinoza Gonzalez was negligent and (2) his negligence harmed Conrado. He sought $1,056,250.00 in attorney fees, representing a total of 1,325.00 hours accrued by four different attorneys.[6] Each attorney provided a declaration in support of the fee request. According to the declarations, none of the attorneys was charging by the hour for working on Conrado's case. The attorney declarants did not provide contemporaneous records of their time. Instead, they sought to support the fee request by describing, in very general terms, the types of tasks they had performed over the course of the entire litigation (e.g., "prepared four motions in limine" or "assisted in trying the case"); by estimating the total number of hours to be compensated, without breaking the hours down into discrete tasks to show how they arrived at the

---

[5] Section 2033.420 provides for an award of costs of proof (including attorney fees) where a party responding to such a request fails to admit the truth of a matter that is later proved to be true through the efforts of the requesting party. (See § 2033.420, subds. (a), (b).)

[6] Conrado also sought $255,642.38 in costs (the same amount of costs requested in his cost memorandum and cost motion under sections 630 and 1032).

8

total; and by proposing an hourly rate based on their respective personal beliefs about the rate they deserved, without providing evidence of the reasonable rates charged in the local community for comparable work.

More specifically, the first attorney estimated he "reasonably expended 400 hours to prepare for and try this matter" and "reasonably expended 25 hours" assisting with an unspecified post-trial motion. He averred that based on his experience and background, he would charge $1,250 per hour "if [he] was to charge an hourly fee in California."

The second attorney averred she had worked on Conrado's case from service of the complaint through trial. The litigation tasks she performed assertedly included preparing and responding to unspecified written discovery; selecting and designating unnamed experts and preparing them for their depositions; attending a mandatory settlement conference and a private mediation; overseeing "all pleadings . . . and [75] appearances," with no indication what the pleadings or 75 appearances addressed; taking 13 unidentified expert depositions; preparing "all the initial pre-trial documents"; and exchanging 200 emails "regarding this case." She averred she had been awarded $750 per hour "in a similar[ly] complex[ ] matter" and estimated she spent a total of "over four hundred (400) hours" in Conrado's case "helping to establish both negligence and causation."

The third attorney averred she prepared four unidentified motions in limine and two unspecified trial briefs and was "present and assisted in trying the case during the entire trial." She averred, based on personal belief, that "a reasonable hourly fee for [her] time is $450.00" and estimated she spent "approximately 250 hours assisting in proving negligence and causation in this case."

9

The fourth attorney averred she had prepared six motions in limine as well as unspecified trial briefs and posttrial briefs, and was "present and assisted in trying the case during the entire trial." Like the third attorney, the fourth attorney also averred, exclusively on personal belief, that "a reasonably hourly fee for [her] time is $450.00" and estimated she had spent "approximately 250 hours assisting in proving negligence and causation in this case."

In opposition, Defendants argued the supporting declarations for attorney fees under section 2033.420 were deficient because the attorneys failed to differentiate time spent proving the denied requests from time spent on other litigation tasks. Defendants claimed Conrado was, in effect, impermissibly seeking attorney fees for the entire six-week trial when at most one trial day (in hours) was spent proving liability. Defendants also contended the hourly rates requested were not in line with local hourly rates.

B.    *The Hearing on Conrado's Posttrial Motions*

At the January 27 hearing, the trial court granted in full Conrado's request for $255,642.38 in prevailing-party costs pursuant to sections 630 and 1032. It denied Conrado's motion for additur or new trial. The court observed that the jury's verdict showed it did not accept the testimony of Conrado's experts on the scope of his claimed injuries. The court stated Conrado himself had "serious credibility issues," even as to "the quality and nature of his injuries," and that the jury "made an independent assessment, which they could do based upon the testimony."

Turning to Conrado's section 2033.420 motion, the trial court granted the motion and awarded $500,000 in attorney fees (1,000 hours at $500 per

10

hour).[7] The court found "the billings . . . provided" by the attorneys were not "discre[te]" and failed to "divide [time] up between every issue in the case." The court nevertheless proceeded to award fees based on its own sense of overall reasonableness, without attempting to determine the time actually spent proving the denied matters. As for the number of hours to be compensated, the court expressed the view that Conrado was entitled to recover "the hours from the day the case was filed until, in essence, the jury returned its verdict" because during this period, "the plaintiff was under an obligation to adequately prepare on each and every element of the cause of action pled in the complaint." The court found that 1,000 hours was a reasonable amount of time to spend fulfilling this obligation. With respect to hourly rates, the court agreed with the defense the rates requested were too high, saying "[t]his ain't San Francisco with respect to fees." The court selected $500 per hour as a reasonable hourly rate based on its familiarity with rates charged in other cases, although it did not tell the parties what those rates were.

C. *The January 27, 2022 Minute Order Granting Conrado's Attorney Fees, from which Defendants Appeal*

On January 27, 2022, the trial court issued a minute order granting Conrado attorney fees of $500 per hour for 1,000 hours under section 2033.420 (January 2022 minute order).

On February 1, 2022, Conrado served a proposed order reflecting the rulings made during the hearing (i.e., denying the motion for additur or new trial, granting costs under sections 630 and 1032, and granting attorney fees

---

[7] The court denied Conrado's request for $255,642.38 in costs under section 2033.420 on the ground it was duplicative of the $255,642.38 in prevailing party costs it had already awarded him.

11

under section 2033.420), as well as a proposed judgment. Defendants objected to both documents on the ground they failed to acknowledge defendants' potential entitlement to costs and expert witness fees under section 998.

On March 25, 2022, defendants filed a notice of appeal from the January 2022 minute order.

D.    *Defendants' Motion Under Section 998*

On January 20, 2022, before the hearing on Conrado's posttrial motions, defendants filed a motion seeking a total of $297,360.27 in costs and expert fees under section 998. Defendants argued their $250,001 offer to compromise exceeded the sum of the jury's special verdict ($181,605.61) plus Conrado's pre-offer costs ($27,146.29, according to defendants' calculations). Defendants sought to recover their own post-offer costs and expert fees under the cost-shifting provisions of section 998.

Conrado opposed defendants' motion on two grounds. First, he argued defendants' offer to compromise was not enforceable because it included an overly broad general release. Second, although he conceded his pre-offer costs were only $27,146.29, he argued his pre-offer section 2033.420 attorney fees should be considered as well. He argued the special verdict ($181,605.61) plus his pre-offer costs ($27,146.29) and pre-offer section 2033.420 attorney fees ($75,435)[8] equaled $284,186.90, which was more than defendants' $250,001 offer.

---

[8]    Conrado derived this dollar amount by adding up the hours assertedly worked by *six* attorneys before the offer was made and claimed the total, when multiplied by $500 per hour, came to $75,435. His section 2033.420 motion only covered the work of four attorneys.

Defendants responded that the proposed release did not invalidate their section 998 offer, and that Conrado's pre-offer section 2033.420 attorney fees could not be considered in determining whether the judgment he obtained was more favorable than their offer.

In April 2022, at the hearing on defendants' section 998 motion, the trial court ruled that it would hold the section 998 motion in abeyance pending resolution of the appeal of the court's January 2022 minute order granting Conrado's attorney fees under section 2033.420.

E.     *The May 10, 2022 Order and Entry of Judgment*

On May 10, 2022, the trial court entered the order originally proposed by Conrado three months earlier, on February 1 (May 2022 order).  The May 2022 order (1) denied Conrado's motion for new trial or additur, (2) granted his motion for prevailing-party costs in the amount of $255,642.38, and (3) granted his motion for section 2033.420 cost-of-proof attorney fees in the amount of $500,000.

The same day, the trial court also entered the judgment originally proposed by Conrado in February 2022.  The judgment encompassed the $181,605.61 special jury verdict and $255,642.38 cost award, as well as the $500,000 in section 2033.420 attorney fees.

F.     *Defendants' Motion to Vacate Judgment and for New Trial*

Defendants filed a motion to vacate judgment and for new trial challenging the May 2022 order and judgment on two grounds.  First, defendants argued the order and judgment should be vacated to the extent they included the $500,000 fee award that was the subject of the pending appeal.  Second, defendants argued it was improper for the trial court to enter any judgment, because it had not yet ruled on their section 998 motion.

13

At the hearing on defendants' motion to vacate or for new trial, the trial court ruled it would partially grant the motion as to the $500,000 attorney fee award, which was on appeal. The court directed defense counsel to prepare a proposed order reflecting its ruling. On July 12, 2022, the court entered defendants' proposed order granting their motion to the extent it sought vacatur of the portions of the judgment and of the order that awarded Conrado $500,000 in section 2033.420 attorney fees, and denying the remainder of their motion (July 2022 order).

On July 21, 2022, defendants filed a notice of appeal from the judgment and May 2022 order, to the extent not vacated by the July 2022 order.[9] The second appeal was docketed under the same case number as the appeal of the January 2022 minute order. Thus, both appeals are presently before this court.

---

[9]     Defendants' notice of appeal also stated they were appealing from an anticipated amended judgment and anticipated amended fees and costs order, as well as the July 2022 order to the extent it partially denied defendants' motion to vacate the judgment and May 2022 order. However, no amended order or amended judgment was ever entered, and defendants have not raised claims of error in the July 2022 order in their appellate briefing.

DISCUSSION

I.

*We Will Reverse the January 2022 Minute Order Granting Conrado's Motion Under Section 2033.420 and Awarding Cost of Proof Attorney Fees*

We first consider defendants' challenge to the trial court's January 2022 order granting Conrado's section 2033.420 motion for cost-of-proof sanctions and awarding him $500,000 in attorney fees.[10]

A.      *Relevant Legal Principles*

" 'A party to a civil action may propound a written request that another party "admit the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact." ' [Citation.]  Section 2033.420, subdivision (a) provides for an award of costs of proof where a party responding to such a request fails to admit the truth of a matter that is later proved[.]" (*Orange County Water Dist. v. The Arnold Engineering Co.* (2018) 31 Cal.App.5th 96, 114–115 (*Arnold Engineering*).) Under subdivision (a) of section 2033.420, "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so . . . , and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."  Under subdivision (b) of section 2033.420, "[t]he court shall make this order" unless, among other things, "[t]he party failing to make the admission had reasonable

_____

[10]    Defendants contend, and we agree, that the order granting Conrado's motion for section 2033.420 cost-of-proof fees is appealable as a collateral order.  (See *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1015.)

15

ground to believe that that party would prevail on the matter" or "[t]here was other good reason for the failure to admit."  (§ 2033.420, subd. (b)(3)–(4).)

" 'The primary purpose of requests for admissions is to set at rest triable issues so that they will not have to be tried; they are aimed at expediting trial.  [Citation.]  The basis for imposing sanctions under [the statute] is directly related to that purpose.  Unlike other discovery sanctions, an award of expenses pursuant to [the statute] is not a penalty.  Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission where the admission sought was "of substantial importance" [citations] such that trial would have been expedited or shortened if the request had been admitted.' "  (*Arnold Engineering, supra,* 31 Cal.App.5th at p. 115.)

Two limits on the scope of a costs-of-proof award under section 2033.420 are relevant here.  The first is temporal:  section 2033.420 only permits recovery of costs or fees incurred *after* a request for admission has been denied.  (See § 2033.420, subd. (a) [requesting party may recover expenses incurred "thereafter" following denial of request for admission].)  The second is topical:  the requesting party cannot recover costs or fees under section 2033.420 for proving matters *other* than the matters covered by the improperly denied requests.  (*Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 736–737 (*Garcia*).)  Therefore, when a party seeks to recover costs and fees under section 2033.420, "[t]he requested amounts must be segregated from costs and fees expended to prove other issues." (*Grace v. Mansourian* (2015) 240 Cal.App.4th 523, 529 (*Grace*).)

A trial court order granting a motion under section 2033.420 and awarding expenses is reviewed for an abuse of discretion.  (*Arnold Engineering, supra,* 31 Cal.App.5th at p. 118.)  " ' "[T]he abuse of discretion

16

standard measures whether, given the established evidence, the lower court's action 'falls within the permissible range of options set by the legal criteria.' [Citation.]" ' [Citations.] We do not defer to the trial court's ruling when there is no evidence to support it. In addition, 'discretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied.' " (*Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 452.)

B.    *Analysis*

On appeal, defendants do not challenge the trial court's implied determination that they unreasonably denied Conrado's requests for admission asking them to admit negligence and causation of some harm.[11] Rather, they challenge the court's calculation of the attorney fees they owed to Conrado as a result. They argue the fee award was overly broad in the scope of tasks compensated, and that the hourly rate the court selected was insufficiently substantiated.

We agree and conclude the court abused its discretion, in four respects: (1) it awarded fees incurred before the requests for admission were denied; (2) it awarded fees incurred throughout the trial on the theory the attorneys

---

[11]    As we have already noted, at the January 27, 2022 hearing, the trial court ruled the jury properly rejected Conrado's claims with respect to the scope of injuries he sustained in the collision. Although the court made this ruling in denying additur, it is apparent from this ruling that the court did not believe Conrado succeeded in proving "all injuries [he] sustained as a result of the [incident]," i.e., the issue that was the subject of his request for admission number 26. (See § 2033.420, subd. (a) [requesting party may not recover cost-of-proof expenses under § 2033.420 incurred in proving the truth of a denied request for admission unless it "thereafter proves . . . the truth of that matter"].)

17

remained obligated to "prepare" to prove the matters denied; (3) it awarded fees without considering whether they were incurred for proving the matters denied—negligence and causation of some harm to Conrado (in other words, liability [see CACI No. 400 (Negligence - Essential Factual Elements)]); and (4) its selection of the hourly rate used to calculate the award was not adequately supported.

1. *The Trial Court Improperly Awarded Fees Incurred Before the Requests for Admission Were Denied*

The parties agree the trial court abused its discretion in at least one respect: it awarded fees incurred before the requests for admission were denied. They are correct. When explaining the basis for its fee award, the court expressly stated they covered the period "*from the day the case was filed until . . . the jury returned its verdict*[.]" (Italics added.) This was error, because section 2033.420 only permits recovery of fees incurred *after* a request for admission has been denied. (See § 2033.420, subd. (a); *Garcia*, *supra*, 28 Cal.App.4th at pp. 736–737 [error to award fees incurred before denying party served its responses to requests for admission].) The court acted outside its statutory authority and abused its discretion by requiring defendants to pay for tasks Conrado's attorneys performed before defendants served their responses to the requests for admission.

2. *The Trial Court Abused Its Discretion by Awarding Fees Based on a Duty to Prepare, Without Evidence of Actual Preparation or of Subsequent Proof*

The trial court's decision to award fees throughout the trial "*until . . . the jury returned its verdict*" was also not justified. (Italics added.) The court reasoned that fees throughout this period were warranted because the attorneys remained "under an obligation to adequately prepare on each and every element of [negligence] . . . to get ready to prove that by a

18

preponderance of the evidence[.]" This was not an appropriate basis upon which to award fees under section 2033.420.

The authority to grant attorney fees under section 2033.420 is circumscribed. "[T]he statute authorizes only those expenses 'incurred in making that proof,' i.e., proving the matters denied by the opposing party." (*Garcia*, *supra*, 28 Cal.App.4th at pp. 736–737.) " 'Expenses are recoverable only where the party requesting the admission "proves . . . the truth of that matter," not where that party merely prepares to do so.' " (*Grace*, *supra*, 240 Cal.App.4th at p. 530.)

Despite these bright line rules, the trial court awarded fees assertedly incurred throughout the trial on the theory that Conrado's attorneys remained obligated to "prepare" to address each and every element of his complaint until the jury returned its verdict. Preparation alone, without subsequent proof, is not compensable under section 2033.420. (*Grace*, *supra*, 240 Cal.App.4th at p. 530.) Moreover, as we discuss in more detail below, the court had no evidence of tasks Conrado's attorneys actually performed during the trial to prove the specific liability matters defendants denied. On remand, the trial court must determine the work actually performed by the attorneys to prove the specific liability matters denied, and its award must compensate only those tasks.

> 3. *The Trial Court Abused Its Discretion by Awarding Fees Without Adequate Evidence They Were Incurred for Proving the Specific Matters Denied*

Defendants further contend the declarations submitted in support of Conrado's request for cost-of-proof attorney fees was inadequate, and that the trial court erred by basing its award on such evidence. We agree.

Section 2033.420 is not a general fee-shifting statute. "One need not be a prevailing party to be entitled to sanctions under this statute." (*Smith v.*

19

*Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 275 (*Smith*).)  Rather, section 2033.420 permits a propounding party to recover those costs or fees incurred for a specific, limited purpose:  to prove those issues or facts a responding party unreasonably fails to admit.  (§ 2033.420, subd. (a).)  "[T]he statute authorizes *only* those expenses 'incurred in making that proof,' i.e., proving the matters denied by the opposing party."  (*Garcia*, *supra*, 28 Cal.App.4th at pp. 736–737, italics added; see Evid. Code, § 190 [" 'Proof' is the establishment by evidence of a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."].)  Further, " '[e]xpenses are recoverable only where the party requesting the admission "proves . . . the truth of that matter," not where that party merely prepares to do so.' " (*Grace*, *supra*, 240 Cal.App.4th at p. 530.)

An award issued under section 2033.420 must be supported by evidence.  (*Garcia*, *supra*, 28 Cal.App.4th at p. 737.)  "Plaintiffs must show they spent the amounts claimed to prove the issues defendants should have admitted.  [Citations.]  The requested amounts must be segregated from costs and fees expended to prove other issues."  (*Grace*, *supra*, 240 Cal.App.4th at p. 529.)  Similarly, given the limited scope of fees available under section 2033.420, any award issued pursuant to the statute must not include fees incurred for litigation tasks other than proving the matters denied.

In *Garcia*, the court reversed a costs-of-proof award because it was based solely on an attorney's conclusory declaration.  In the declaration, counsel "claimed some $18,245.73 in 'attorney[ ] fees, costs and other expenses associated with the trial of this case and proving those [r]equests for [a]dmissions numbered 1 through 15,' all incurred after . . . the date [the requesting party] propounded its request for admissions."  (*Garcia*, *supra*, 28 Cal.App.4th at p. 736, italics omitted.)  In addition to covering an overly

20

broad time frame that included the period before the requests for admission were served, the declaration "failed to set out either [the attorney's] hourly fee or any accounting of time spent on the case" and "include[d] matters not properly the subject of a [statutory] sanction." (*Id.* at p. 737.) The court held it was error to issue a costs-of-proof award on the basis of such a conclusory and overly broad declaration. (*Ibid.*)

The declarations submitted in support of the section 2033.420 fee request in this case are materially indistinguishable from the declaration found insufficient in *Garcia*. Like the declaration in *Garcia*, the declarations of Conrado's attorneys were overly broad in temporal scope, covering the period from the inception of the case through the conclusion of trial. They were also impermissibly generalized in describing the tasks for which compensation was sought, failing to differentiate time spent proving the liability matters denied from time spent on other litigation tasks. Indeed, the declarations purported to encompass every task performed by each of the attorneys throughout the entire case, without regard for whether those tasks bore any relationship to proving the truth of the matters defendants failed to admit (e.g., attending mediation, reading over 200 unspecified emails, working on "all pleadings" and making over 75 court appearances, regardless of purpose or subject matter). As in *Garcia*, the declarations of Conrado's counsel provided inadequate information to enable the trial court to calculate the amount of fees recoverable under section 2033.420. (See *Garcia*, *supra*, 28 Cal.App.4th at p. 737.)

Conrado, relying on *Doe v. Los Angeles County Department of Children & Family Services* (2019) 37 Cal.App.5th 675, argues fees requested pursuant to section 2033.420 need not be separately allocated to each specific request for admission where the requests all relate to a single issue (here, liability).

21

This misses the point. Conrado's attorneys' declarations were deficient not because they were insufficiently granular in their allocation of fees to the denied requests for admission, but because they were devoid of any such allocation at all.

Although the trial court awarded less than the total fees requested by Conrado's attorneys, the reduction did not cure its error in granting fees on the basis of inadequate declarations. The court simply reduced Conrado's requested lump sum of 1,325 attorney hours to 1,000 hours. It did so not because it determined 1,000 hours was the number of hours actually spent proving the matters defendants denied, but because it concluded Conrado's attorneys deserved to be compensated for litigating the entire case, and because it believed after "looking at the time in this case . . . a thousand hours is reasonable."

But section 2033.420 does not authorize courts to grant fees for all time reasonably spent litigating a civil case; it authorizes only those fees incurred proving the truth of the specific matters not admitted. The trial court exceeded its authority under section 2033.420 by awarding fees based on conclusory declarations that included "matters not properly the subject of a section [2033.420] sanction" (*Garcia, supra*, 28 Cal.App.4th at p. 737) and by compensating attorney hours without regard for whether they were spent proving the truth of the specific liability matters defendants failed to admit (§ 2033.420, subd. (a)).

In their appellate briefing, the parties dispute which specific litigation tasks were and were not compensable under section 2033.420. Defendants contend the liability issues that were the subject of Conrado's requests for admission were proven on the fifth day of trial, when Espinoza Gonzalez testified to running a red light; they argue Conrado was not entitled to

recover fees past this point.  Defendants also dispute whether Conrado was entitled to fees incurred for certain pre-trial and trial motions.  Conrado, on the other hand, maintains he was entitled to fees throughout the duration of the trial, or at least until the point when the trial court granted his motions for directed verdict.  We need not decide these issues.  As we will be remanding this matter for a redetermination of fees, the trial court will be in a position to decide them in the first instance.

4. *The Hourly Rate Selected by the Trial Court Was Not Adequately Supported*

Defendants contend the trial court's selection of $500 per hour as the reasonable hourly rate at which to compensate Conrado's counsel lacked adequate record support.  We agree.

Section 2033.420 authorizes trial courts to award "reasonable attorney's fees."  (§ 2033.420, subd. (a).)  Under a lodestar approach, which is the approach the trial court appeared to use here, reasonable fees are calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).)  "The reasonable hourly rate is that prevailing in the community for similar work."  (*Ibid.*)  The lodestar approach "anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*Ibid.*)

As we have discussed, Conrado's attorneys asked to be compensated at hourly rates ranging from $450 to $1,250 per hour.  They made no showing that these were the prevailing hourly rates in the community for similar work.

In adjusting counsel's requested hourly rates to a blended rate of $500 per hour, the trial court stated it was relying on its own experience "in 32

23

years of practice as a bench officer." The court appeared to also consider its "L.A. time" and "my Orange County time as a civil attorney" and resulting knowledge of "what those firms are getting" as well as "what the prevailing dollars are in this neck of the woods." It observed that "[a] high dollar law firm in Los Angeles in [the late 1970s] for a partner was 350 to 500"; stated it had "seen settlements on lemon law cases for $16,000 and $120,000 in attorney's fees"; and noted that "any number of firms that appear before [the court] regularly . . . charge[ ] 750, 800 bucks an hour." The court also told the parties it was considering fees charged by "big firms in the Inland Empire," although it did not state what those fees were.

We acknowledge " '[t]he "experienced trial judge is the best judge of the value of professional services rendered in his court[.]" ' " (*PLCM, supra*, 22 Cal.4th at p. 1095.) And it is true, as Conrado contends, " ' "[t]he trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony." ' " (*Hoffman v. Superior Ready Mix Concrete, L.P.* (2018) 30 Cal.App.5th 474, 488.) Here, the difficulty we have with the trial court's selection of a $500 hourly rate is that the basis for the selection was not disclosed, which precludes our ability to conclude the court's methodology was not arbitrary.

At least some of the data points the trial court identified during the discussion that preceded its ruling were clearly not relevant, such as prevailing Los Angeles rates in the late 1970s. And yet in arriving at its decision, the court did not specify it was ignoring the irrelevant factors it had mentioned and was relying only on relevant ones. It simply stated it was "taking into account what I would need to think is reasonable here and in my experience[.]" The court provided no indication on what, specifically, it was basing its ruling. And because the court never identified a prevailing local

24

rate for similar work, we cannot independently confirm the ruling was based on relevant considerations. The record thus creates the inescapable impression the method by which the court arrived at a $500 hourly rate was arbitrary. (Cf. *PLCM*, *supra*, 22 Cal.4th at p. 1095 [lodestar approach is meant to ensure "the trial court's analysis [relies on] an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary"]; *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782 [abuse of discretion shown where a trial court's ruling was arbitrary].) As a result, we will reverse this aspect of the court's order as well.

C.  *We Will Remand for a Redetermination of Fees*

Defendants contend that Conrado "failed to meet . . . his threshold burden of proof under section 2033.420," and as a result we must not only vacate the $500,000 attorney fee award, we must do so with directions to deny *any* costs-of-proof attorney fees under section 2033.420. On this point, we disagree with defendants.

It is not the case that Conrado entirely failed to meet his threshold burden of proof under section 2033.420. Under subdivision (a) of section 2033.420, "[i]f a party fails to admit . . . the truth of any matter when requested to do so . . . , and if the party requesting that admission thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." Upon a sufficient showing under subdivision (a) by the party requesting the admission, subdivision (b) requires the trial court to make such an order against the responding party, "unless [the court] finds any of the following: [¶] (1) An objection to the

25

request was sustained or a response to it was waived . . . . [¶] (2) The admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit." (§ 2033.420, subd. (b).)

Conrado met his threshold burden under subdivision (a) of section 2033.420 by establishing that defendants failed to admit the truth of the liability matters that were the subjects of request numbers 4, 9, 10, 20, 25, 27, and 29, and that he thereafter proved the truth of those matters. Defendants did not seek to establish any of the exceptions in subdivision (b). Accordingly, the trial court was required to make an order requiring defendants to pay Conrado's reasonable attorney fees "incurred in making that proof." (§ 2033.420, subd. (a).)

The defect in Conrado's showing was that he submitted declarations that were insufficient to establish the fees he sought were recoverable under section 2033.420 because they were overly broad and failed to differentiate time spent proving the matters denied from time spent on other tasks of litigation. This overbreadth carried over into the trial court's order and resulted in an award that encompassed tasks not compensable under section 2033.420. In this scenario, appellate courts have remanded for a redetermination of fees. (*Garcia, supra*, 28 Cal.App.4th at pp. 737–738 [remanding for redetermination of costs and fees after reversing costs of proof award that was based on counsel's conclusionary and overly broad declaration]; *Smith, supra*, 87 Cal.App.3d at pp. 279–280 [remanding with instructions to trial court "to reconsider the evidence or take further evidence on the issue of the expenses and attorney's fees necessarily incurred . . . and reasonably related to proving matters wrongfully denied" in a case where

26

there was "no sufficient [evidentiary] showing . . . of that proportion of the amount of expenses and attorney's fees requested which was attributable to the various matters of proof or whether the sum requested represented the reasonable costs of making proofs"].) We will do the same.

In claiming we should put an end to the matter and direct the trial court to enter an order denying fees, defendants rely on *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 919 (*Kelly*) and *Bank of America v. Superior Court* (1990) 220 Cal.App.3d 613, 626–627 (*Bank of America*).

But *Kelly* and *Bank of America* are distinguishable. Neither involved a fee request under section 2033.420. *Bank of America* held "the unqualified reversal rule [which permits retrial following an unqualified reversal] has no application in a case where a motion for judgment notwithstanding the verdict was made and denied by the trial court, and the appellate court reverses the judgment for insufficiency of the evidence." (*Bank of America*, *supra,* 220 Cal.App.3d at p. 626.) In *Kelly*, this court reversed a punitive damages award based on the insufficiency of the trial evidence. (*Kelly*, *supra,* 145 Cal.App.4th at pp. 916–918.) Citing *Bank of America*, among other cases, we declined to remand for a retrial of punitive damages. (*Kelly*, at pp. 919–920.) We explained the plaintiff presented no evidence at trial of the defendant's net worth even though the trial court expressly offered to interrupt the trial so the plaintiff could obtain the necessary testimony. (*Ibid*.) After reviewing cases in which appellate courts had denied retrial under similar circumstances, we decided denial of retrial was "the proper resolution here as well." (*Id.* at p. 920.)

*Bank of America* and *Kelly* do not persuade us to deny further proceedings on the amount of reasonable attorney fees to which Conrado is entitled under section 2033.420. They are procedurally inapt, as they

27

involved reversal of trial verdicts rather than motions for cost-of-proof expenses. Substantively, they are also distinguishable. In both cases, the parties with the burden of proof failed to meet their threshold burden. Here, as we have discussed, Conrado did meet his threshold burden for an order granting attorney fees under section 2033.420, subdivision (a), with respect to the foregoing requests. As a result, he established he is entitled to recover reasonable fees incurred to prove the matters in those requests.

Accordingly, we will not foreclose the trial court from conducting such further proceedings as it deems necessary to enable it to determine the attorney fees reasonably related to proving the matters defendants denied.

II.

*We Will Reverse the Judgment Because the Trial Court Committed Reversible Error by Entering It Before Resolving Defendants' Section 998 Motion*

A. *Appealability*

As stated above, defendants' second notice of appeal was taken from the May 2022 order and judgment, to the extent not vacated by the July 2022 order vacating the $500,000 section 2033.420 fee award from both documents. It was also taken from, among other things (see fn. 9, *ante*), the July 2022 order to the extent it partially denied defendants' motion to vacate the judgment and May 2022 order.

Conrado challenges the appealability of the May 2022 order, the judgment, and the July 2022 order. First, he argues the May 2022 order is "moot" because it was vacated and "superseded" by the July 2022 order. This is not correct. The May 2022 order set forth three rulings in which the trial court: (1) denied Conrado's motion for new trial or additur, (2) granted Conrado's motion for costs under sections 630 and 1032, and (3) granted Conrado's motion for attorney fees under section 2033.420. The July 2022

28

order vacated only the portion of the May 2022 order that granted section 2033.420 attorney fees, leaving the remainder of the May 2022 order intact. Thus the May 2022 order was not fully vacated, or "moot[ed]," by the July 2022 order.

Next, Conrado appears to contend the judgment was not a final judgment, and is therefore nonappealable, because "the trial court . . . made it abundantly clear" during the April 18, 2022 hearing on the section 998 motion "that it retained jurisdiction to determine the impact, if any, of [defendants'] pending motion for offset [of the verdict pursuant to section 998] after resolution of this appeal[.]"

This argument does not withstand scrutiny. True, the trial court orally stated during the hearing on the section 998 motion that it would hold the motion in abeyance until the appeal of its attorney fee order was decided. After making this statement, however, the court entered the May 2022 judgment. "The meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally. [Citations.] ' "[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention." ' " (*People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76; accord, *Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 418.) The substance and effect of the judgment, not its label, is determinative. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698.)

Here, nothing about the contents of the judgment reflects that it is tentative or nonfinal. It recites the jury's special verdict in its entirety and then summarizes the trial court's posttrial ruling granting Conrado's motions for costs of $255,642.38 under sections 630 and 1032. It concludes with the following sentence: "THEREFORE, IT IS ORDERED, ADJUDGED AND

29

DECREED that plaintiff Diego Conrado have and recover from defendants CLS Landscaping Management, Inc., and Jose Juan Espinoza Gonzalez the sum of $181,605.61, [and] the Plaintiffs costs in the amount of $255,642.38[.]"[12]  (Boldface omitted.)  The quoted language unambiguously conveys that the sums owed by defendants are certain and final.  It is written in the present tense and provides that Conrado is to "have and recover" the sums stated in the present, without qualification.  Nothing in the judgment reflects an intent to alter these amounts in the future or conveys that the judgment is to be considered nonfinal pending future determination of defendants' section 998 motion.  In fact, the judgment does not mention the section 998 motion at all.

The text of the judgment unambiguously conveys that it is a final judgment, not an interim or interlocutory judgment.  "Judgments that leave nothing to be decided between one or more parties and their adversaries, or that can be amended to encompass all controverted issues, have the finality required by section 904.1, subdivision (a)." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741.)  Therefore, the judgment is appealable.

Finally, Conrado contends defendants cannot appeal the July 2022 order.  He argues any error in the order is invited error, because defendants prepared the order and submitted it for the trial court's signature.  Conrado overlooks that the trial court *instructed* defendants to prepare and submit an

_____

[12]    As originally entered, the judgment also summarized the trial court's ruling granting Conrado's motion for $500,000 in section 2033.420 attorney fees, and stated in its concluding sentence that Conrado was to recover from defendants "attorneys' fees in the amount of $500,000.00."  We omit this language because it was vacated from the judgment pursuant to the court's July 2022 order, and defendants' appeal is taken from the judgment as partially vacated.

order conforming to its decision; in submitting the order, defendants were simply carrying out this directive. The doctrine of invited error does not apply to this scenario. (Cf. *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [doctrine of invited error applies " '[w]here a party by his conduct induces the commission of error' "].) In any event, although defendants stated in their notice of appeal they were appealing the July 2022 order, they have raised no arguments in their appellate briefs challenging it. Thus, no error in the July 2022 order has been identified, making the doctrine of *invited* error doubly inapplicable here.

B.     *The Trial Court Erred by Entering Judgment Before Ruling on Defendants' Section 998 Motion*

1.     *Contentions on Appeal*

Defendants seek reversal of the judgment on the ground that section 998, by its own terms, requires trial courts to apply its provisions before any judgment is entered. They contend their offer to compromise was valid, contrary to Conrado's trial court opposition briefs in which he argued the attached release was overly broad and invalidated the offer; their $250,001 offer exceeded the $181,605.61 jury verdict plus Conrado's $27,146.29 in pre-offer costs; and, for various reasons, the $500,000 section 2033.420 award does not affect the section 998 calculus (including because it "necessarily will be reversed"). In essence, defendants would have us determine the merits of their section 998 motion as a precursor to determining whether to reverse and remand to the trial court for (in their words) "a determination of defendants' section 998 motion."

In response, Conrado objects that defendants are asking this court "to determine, as a matter of first impression, that [defendants] are the prevailing party." (Fn. omitted.) He contends defendants' section 998 motion has not been ruled upon by the trial court and cannot be decided by this court

in the first instance. He claims defendants are being deceptive and are seeking reversal of the May 2022 order and judgment as a ploy to "get the award of costs, pursuant to [sections] 630 and 1032, which [defendants] did not object to, and which they didn't appeal from, reversed by this Court."

In reply, defendants clarify they are not asking this court to determine the outcome of their section 998 motion. The reason they have argued the merits of the motion to this court, they explain, is simply to show they were prejudiced by the trial court's failure to decide the motion before entering judgment. In response to Conrado's complaint that they are improperly trying to have his award of prevailing party costs (which defendants call "normal costs") reversed, defendants state they are not seeking to vacate the $181,605.61 jury verdict amount or Conrado's $255,642.38 cost award. Rather, they are merely seeking to vacate entry of judgment on the ground that "no judgment can be entered until the trial court first determines the section 998 issue." Thus, they state, "[t]he $255,642.38 normal costs award is irrelevant to this appeal."

### 2. Analysis

As noted, defendants contend section 998 requires courts to apply its provisions before entering judgment. We agree. We further conclude the trial court's error in prematurely entering judgment was reversible, and we do so without determining the merits of defendants' section 998 motion.

" '[S]ection 998 establishes a procedure to shift costs if a party fails to accept a reasonable settlement offer before trial. The purpose of the statute is to encourage pretrial settlements.' [Citation.] If the party who prevails at trial obtains a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party cannot recover its own postoffer costs but must pay its opponent's postoffer costs, including,

32

potentially, expert witness fees." (*Oakes v. Progressive Transportation Services, Inc.* (2021) 71 Cal.App.5th 486, 497 (*Oakes*).)

Section 998 states in relevant part:

"(c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant. [¶] . . . [¶]

"(e) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the costs under this section, from the time of the offer, shall be deducted from any damages awarded in favor of the plaintiff. If the costs awarded under this section exceed the amount of the damages awarded to the plaintiff the net amount shall be awarded to the defendant and judgment or award shall be entered accordingly." (§ 998, subds. (c)(1), (e).)

In *Oakes*, the Court of Appeal held the plain language of section 998 dictates that its provisions must be applied before entry of a final judgment between the parties. The court observed "[s]ection 998, subdivision (e) states that when a plaintiff fails to obtain a more favorable judgment or award than a defendant's section 998 offer, the costs awarded to the defendant 'shall be deducted from any *damages awarded in favor of the plaintiff*. If the costs awarded under this section exceed the amount of the damages awarded to the

33

plaintiff the net amount shall be awarded to the defendant and *judgment or award shall be entered accordingly.*' " (*Oakes, supra,* 71 Cal.App.5th at pp. 503–504.) Section 998 thus "requires deduction of the defendant's postoffer costs from the plaintiff's damages award; then if the costs exceed the amount of the award, . . . a judgment must be entered in the defendant's favor." (*Id.* at p. 504.) The court then observed that "judgment" is defined in section 577 as " 'the final determination of the rights of the parties in an action or proceeding.' " (*Oakes,* at p. 504.) "Section 998 thus contemplates entry of a final judgment between the parties *after* its cost-shifting provisions have been applied." (*Ibid.,* italics added.) "[U]nder section 577 a judgment is the final determination of the parties' rights and therefore must reflect any cost shifting under section 998." (*Ibid.*)

We agree with the reasoning and conclusion of *Oakes.* And because section 998 must be applied before entry of final judgment, it follows that the trial court erred by doing the reverse of what the statute requires and entering a final judgment before ruling on defendants' section 998 motion.

Further, we do not need to determine the merits of defendants' section 998 motion in order to conclude that the error is reversible. "In some circumstances where a statute requires that the trial court act in a certain way or otherwise limits the trial court's discretion, rulings ignoring the statutory mandates or exceeding the statutory restrictions have been held reversible per se." (Eisenberg, California Practice Guide: Civil Appeals and Writs (Rutter Group, 2022) § 8:318, p. 8–227, italics omitted.) "[O]ur courts have consistently applied the rule of automatic reversal where a party is prevented from having his or her full day in court." (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 293 [trial judge ended case midtrial and left courtroom; held, the error was reversible per se]; *Moore v. California*

34

*Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 836–837 [trial judge granted judgment on the pleadings sua sponte, without hearing evidence or argument; reversal was automatic].)

Such is the case here. Defendants brought a motion seeking postoffer costs under section 998. The motion, if meritorious, stood to affect the amounts recorded in any judgment entered in this case, since section 998 "requires deduction of the defendant's postoffer costs from the plaintiff's damages award." (*Oakes, supra,* 71 Cal.App.5th at p. 504.) The trial court, without resolving the motion, entered a final judgment providing that defendants owed the full amount of the jury's damages award to Conrado, with no deduction of defendants' postoffer costs. In doing so, the court effectively denied defendants the rights they invoked under section 998 without first determining whether they were entitled to them. The court's error in prematurely entering judgment cannot stand, because section 998 requires its calculations to be performed before entry of judgment.

Consequently, we will reverse the judgment (as partially vacated by the July 2022 order) and remand for a determination of defendants' section 998 motion.

III.

*Defendants Provide No Grounds Upon Which to Reverse the May 2022 Order; Accordingly, We Decline Their Request to Do So*

The May 2022 order, as partially vacated by the July 2022 order, contains two rulings: (1) the denial of Conrado's motion for new trial or additur, and (2) the grant of his motion for prevailing-party costs under sections 630 and 1032 in the amount of $255,642.38.

In the concluding paragraphs of their opening brief and reply brief on appeal, defendants ask us to reverse this order. However, the arguments

35

within their briefs provide no basis for reversal.  Defendants have not challenged the denial of Conrado's motion for new trial or additur.  As for the prevailing-party costs award, defendants state in their reply brief that "[t]he $255,642.38 normal costs award is irrelevant to this appeal."  The May 2022 order, as partially vacated, contains no other rulings.  As we have been provided no reason to reverse the rulings embraced by this order, we decline to do so.

## DISPOSITION

The trial court's January 27, 2022 minute order granting Conrado attorney fees under section 2033.420 is reversed, and the judgment entered on May 10, 2022 is reversed.  The matter is remanded for a redetermination of attorney fees under section 2033.420 in accord with this opinion, and for a determination of defendants' motion pursuant to section 998.  Defendants are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


DO, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.

36